And may it please the Court, I'm Frank Fox for the appellants, Melanie Virachack and her brother, Ritnerone Virachack. I'm going to make just a very brief statement, and then I would like to answer any questions the panel, Your Honor, may have, and then save time to respond to Appley's arguments. I believe that the briefs, at least from my perspective, are fairly complete in their exposition of the facts and the law. But the only thing I feel I'm able to add as to what's already been briefed is I'd like to just comment that I think that the starting point for answering the question posed by this appeal, the issue whether the creditor here, the auto dealership, violated the Truth in Lending Act by omitting the forfeited rebate from the finance charge, is a question that needs to be answered by, obviously, reference to the Truth in Lending Act. It involves a question of statutory interpretation, and we should start with the language of the statute. Obviously, the first provision in that act is the provision that states the purpose of that act. And I think that purpose is particularly important, I believe, in the search for an answer to the question. That purpose, of course, is to assure that the disclosures that are made under the act provide for the informed use of credit and to assure that there are meaningful disclosures so that consumers will be able to compare more various credit terms available. Why is this a finance charge? Well, Your Honor, it's a finance charge because it's a charge that the consumer pays because of the way the transaction is structured. The easiest, I believe, the easiest analysis is to compare the credit transaction with the cash transaction that would have been the alternative. And I think the undisputed fact in the record of this case is that the appellants, if they perform this contract to its conclusion, will have paid $2,417 more than they would have if they bought the same vehicle and paid cash. You know, the problem with that analysis, you treat the use of cash as though it didn't cost anything. Now, if you keep your money under your mattress, that's true. But most people today have it in the bank or in bonds or something. How do you get the cash? You take it out of a bond that's paying 5%. Isn't that a cost? Your Honor, I would agree that it is a cost, but the- All right, then add that in. And you'll find that it costs you more to pay cash than it does to take the low rate of interest.  the meaningful disclosure- Just follow that for a minute. I will. I'll try. You talked about cost. It's going to cost you more if you take your money out of a bond paying 5% than if you take the very low interest rate. OK.  Yes. So what's your argument? Well, my argument, Your Honor, is if you look at the purpose of TLA is to enable the consumer to compare their alternatives. And in order to compare your alternatives, you need to be able to know what this transaction is actually costing you as compared to if you bought this car for cash or financed it through some other means. The record's- Well, if you financed it some other means, you'll be paying maybe 10%. Maybe or maybe less. But the purpose of- No, no. It's 1997. What do you think? We can check all that. But I'm sure that you'll find that it would have cost them a good deal more to have come up with cash and not taken the very low APR. That may be true, Your Honor. If it's true, then your case is a kind of fantasy. Well, I would respectfully disagree, only because the purpose of the statute, I believe, is to ensure that the consumer understands- But it's a statute that's going to give you information that's perfectly useless. I think that may ascribe, from my perspective to Congress, you know, something other than what they intended. I think in enacting this and in intending to make sure that certain guidelines were followed and consumers were provided certain information, they felt these disclosures were meaningful. And the important point here, I believe, Your Honor, is that the consumer should be able to compare what this transaction costs as opposed to if they did this and bought this exact same product and paid cash. And that wasn't done in this transaction. It's just undisputed that if you look at the disclosures in this case- Let me ask you this. If it should have been, assuming that it were a finance charge, how should it have been disclosed in this contract? It should have been disclosed as $2,417 because- Well, where- Yeah, that's what I'm- I tried to figure this out. How would it be disclosed in this contract? How? Well, Your Honor, in the teal of disclosures- Well, I'm looking at- You know, it's got the top, the little box, the Federal Truth in Lending Disclosures. So how would this be reflected as a disclosure in those items? You know, the annual percentage rate, the finance charge amount, finance total. It would be reflected in the finance charge, Your Honor. It would have been- It would appear as a finance charge. It would appear as- I'm sorry. That would have been a strange item rule, appear on the finance charge. I would respectfully disagree, Your Honor, because the finance charge is supposed to tell the consumer the cost of the credit, which is how much does it cost to buy this under this credit plan as opposed to paying cash. And it's absolutely clear they could have bought that vehicle for $2,417 less if they paid cash. So the cost of that credit is $2,417. So you're just comparing the cost of the cash. Yes. And once you do that, it evaporates. What does the word charge mean to you? Well, Your Honor, I think the charge is something that the consumer pays, and that's exactly what happened here in this case. Well, I have a comment or a question on the briefs. I know Mr. Major signed both of them, but the opening brief says you're not charging the defendants with fraud. Well, on page nine of your response brief, you say a defendant Ford dealership, Ford Motor Company, and FM, they're engaged in a three-piece shell game. Now, a shell game is the classic fraudulent operation. How did you come to charge them with running a fraudulent operation by using that? Well, Your Honor, as you noted, I'm at a little bit of a disadvantage because I was not involved in either the proceedings below or even in the briefing. Mr. Major passed away in August. But you inferred. But I will try and respond to the court's question. I think the shell game is intended to address how this transaction was structured to try and circumvent TILA's disclosure requirements. It goes on to say by which consumers are made to think they are paying nothing. It's a direct allegation of fraud in the brief. Well, Your Honor, I'm not sure Mr. Major's intended to ascribe to the dealership fraud. It's a little bit awkward since he's beyond our jurisdiction, but I think you might have noted that that's a pretty blatant assertion. Contrary to what you have alleged in your complaint and contrary to what you say you're doing. I would apologize for it. Well, I'm in a difficult position. Why can't you? Well, because I don't think the intent was to impute fraud. Now that they are engaged in a shell game by which customers are made to think they are paying nothing. Is that your position? Well, Your Honor, it goes back. My position is that the finance charge, because of the thing, the way things were structured. Well, will you repudiate that sentence or stay with it? Well, I will certainly repudiate any implication that it was intended to ascribe fraud to the appellate. Even though you use the term shell game. Yeah, because I don't think that was the intent in using that metaphor, Your Honor. I think the intent was you've got three different entities involved here. And that is the meat. But I use the hand, you know, a colleague used the handy term shell game, which everybody knows is a classic fraud. Well, let me put, if I can try and approach it this way. There's one of my favorite lines, one of my favorite movies is when Deep Throat supposedly said to Bob Woodward, follow the money. And I think that's what Mr. Majors was talking about here in terms of the shell game. It is, you know, if you look at where the money is going and where it's reflected and not reflected, the bottom line is it's not reflected in the finance charge. And that's the simple crux of the case here is that the most important disclosure we believe is to the consumer under TILA to tell them how much it's going to cost if they do this credit transaction as opposed to if they buy this car for cash. But you say as opposed to it. They've got to do that. Then they've got to get into the cost of putting up cash. Sure, they do. So they should know what the difference is. I mean, that's the premise of that disclosure requirement is that consumers should be informed of their alternatives so that they can weigh those and make an informed choice. Should they be informed as to what it costs to take their money out and put up cash? I don't think that's specifically contemplated in the statute's requirements. Eva, you've used your allotted time. We've used your. Thank you. You can have a short rebuttal. Good morning, Your Honors. Jan Chilton for University for I, too, will try to be brief. The issue today is, as you know, how you treat under TILA what is a common practice in the automobile industry. Manufacturers try to sell their cars, and they do so by offering incentives that take the form, take two forms, usually in the alternative, either a cash discount, not a cash discount. Let me make this clear. It's a cash payment by the manufacturer to the dealer or to the customer to offset the cost of the car or a cash payment to the finance company to buy down the rate from the market. She apparently qualified for both. She apparently did. So why wouldn't they? And I don't know if there's a dispute here or not, but but apparently let's just assume that the dealer did not tell her about her eligibility for the cash. That apparently is the factual assumption on which we must go. Right. So why wouldn't they tell the buyer? I have no idea why they wouldn't tell the buyer. And perhaps she has a state law cause of action for fraud. The question is whether she has a federal cause of action under the Truth in Lending Act. And that's the issue before you today. And the point of the matter is that she doesn't because this is not part of a finance. And it isn't because the finance charge requires four elements, a charge paid directly or indirectly by the consumer. Imposed directly or indirectly by the creditor and incident to the extension of credit. So the way this usually works is that if I were to go in and take advantage of the rebate, it's usually applied against the down payment. Isn't that right? If you don't take advantage of the buy down on the financing. Yes. In other words, if you bought the car for cash, the ordinary way that the transaction would be documented would be that the manufacturers rebate would be payable to you as the consumer, but assigned by you to the dealer and would therefore reduce the dealer's net selling price to you. And let me emphasize its net selling price that it reduces. The gross selling price before down payment, before trade in, before manufacturers rebate remains the same. And that's critical here because when we're trying to tease apart what is finance charge from what is selling cost, it's important to realize that in the cash transaction, the selling cost is absolutely the same from the creditor. That is the dealer's point of view. It gets its sale price no matter which way the transaction works and it gets the same sale price. In the cash transaction, it gets part of that sale price from the manufacturer in the form of the assigned cash rebate. In the finance charge, excuse me, in the financing transaction, it gets the entire sale price through sale of the resulting real estate retail installment sales contract. What we have here is basically a choice between two methods of receiving the same amount of money. You can take it as cash or you can take it as a buy down on the credit. But it has to be a buy down on the credit if you finance. Isn't that right? Right. I'm sorry, Your Honor. I didn't hear. It does have to be a buy down if, in fact, you finance the car. Isn't that right? You would have to apply. They aren't going to give me $2,000 in cash and then I finance the car. Well, that's not quite accurate, Your Honor. They will give you $2,000 in cash if you finance the car with any other method of financing other than the bought down rate. In other words, Ms. Virachek could have gone to University Ford and received the $2,000 cash rebate. They would have written her a check for $2,000. University Ford doesn't offer rebates, Your Honor. It's Ford. Ford would have given her a $2,000 check. Ford would have given her a $2,000 check. And University Ford would have written her a retail installment sales contract at market rate and sold it either to the same finance company it actually sold this one to, Ford Motor Credit, or to any other of its outlets for retail installment sales contracts. So it's not true. Well, she could have gone to her credit union and paid her own due. Oh, absolutely. Absolutely. And, of course, then it would have been the same thing all over again. And to come back to Justice Noonan's question. We're not justices. We try to do it. Just judges. I'm trying to elevate the conversation, if not Your Honors. All right. The Judge Noonan asked my opposition about why wouldn't you have to disclose the alternative of paying cash and losing the use of that cash, the monetary value of that cash while you would otherwise be financing it. And that, I think, points out the limited nature of the disclosures that TILA requires. Obviously, there are a lot of factors that may influence a consumer's comparison of one transaction with another. Only some of those are required to be disclosed under TILA. It has to be a finance charge to be disclosed here. The alternative cost of the opportunity cost of using cash rather than financing is not one of those things because it's not a finance charge. So we have to look at what is a finance charge. And the other question that the Court asked that I think is very relevant here is, OK, so how would you disclose this? Now, my opponent says you disclose it, the foregone rebate, as part of the finance charge. But as we pointed out in our brief, if you do that, it throws every other disclosure that TILA does require off. Oh, but you could do it. You could do it. I used to draft these things for a finance company. Well, Your Honor. It was a challenge, but you can do it. All right. Let's let's let's take that. Because you're better at it than I am, no doubt. Let's let's walk through it. So you you if you turn to page six of my brief, you'll see the actual disclosure that was made. Now, you add two thousand dollars to the finance charge. My opponent says that would bring it up to two thousand four hundred dollars. Now, the amount financed, as you know, under TILA has to be the selling price. OK, that remains the same, right? OK. Now, total of payments is the addition of finance charge and amount finance. Correct. So now the total of payments has to go up by two thousand dollars because we've added two thousand dollars to the finance charge. So now it's going to be twenty five thousand dollars rather than twenty three thousand dollars. Well, you don't need to do it that way. You can put in a little star and show down below what the two thousand is. Not and comply with TILA, Your Honor. TILA requires that the total of payments equal the sum of those two numbers, finance charge and amount finance. Put a star there and put it anyway. Well, all right. I won't argue with you.  I'm not going to argue with you, Your Honor, but I'm not going to argue with you that the total of payments is the sum of those two numbers, finance and once you throw off the total of payments, it will change the amount of each payment, which will either which will add to the confusion. Is this a form that's prescribed by the regulations? Yes, it is, Your Honor. No, the contents are prescribed by regulation. But then are these headings prescribed? Yes, the headings are prescribed. Is there something in the regulations to say if you follow the directions, you're safe? Isn't that true? Well, there is something in TILA that says that if you follow the forms suggested by the Federal Reserve Board, you're in a safe harbor. Yes. To return to where I wanted to start, if I didn't, what we have here is one incentive that can be taken two different ways. It's it's like the stewardess offering you coffee, tea or milk, excuse me, flight attendant these days on an airline. All of them are free. But if you choose one, you don't get the other. Now, have you incurred a tea charge when you choose coffee? That's what plaintiff is saying here. You're incurring a foregone rebate charge when you accept the same incentive in a different manner. And that just doesn't make any sense. Thank you. I could make just one point in response, Your Honor. With regard to the impact of including the finance charge, the additional two thousand in the finance charge. One of the things that TILA does allow in the rules of construction under subparagraph Z is a provision that says the disclosure of an amount or percentage which is greater than the amount of percentage required to be disclosed under this title does not in itself constitute a violation of this title. So the idea that whether or not you subtract the two thousand out of the amount financed or leave it there such that it creates, as opposing counsel argued, an inflated sum, the inflated sum is not as much of a problem as suggested. We believe it would be appropriate to deduct it from the amount financed portion of it. And then lastly, with regard to the coffee. You'd put it in and take it out. Pardon? You'd put it in and take it out. Yes. And with regard to the coffee, tea or milk metaphor, I think the underlying point is it's important to know what your choices are. And just because you could choose one and not the other, if you're not told what your other choices are, then you haven't gotten a full disclosure. And ultimately, that's the objective or purpose behind TILA, which we believe was ill-served by the way this transaction was conducted. Thank you. Thank you. The matter will be submitted. The next case on this morning's calendar.
judges: B. Fletcher, Noonan, Paez